UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CLAUDIU V., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant ) | 1:20-cv-00324-LEW |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the April 15, 2020 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 15-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease, migraines, posttraumatic stress disorder (PTSD), and depression. (R. 12.) The ALJ further found that despite his impairments, Plaintiff has the residual functional capacity (RFC) to perform work at the light exertional level, except in an eight-hour workday, Plaintiff can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally balance and climb ladders, ropes or scaffolds; never work in loud or very loud work environments, or at unprotected heights or on slippery work surfaces, or in spaces with flashing or strobing or bright lights, such as those at a construction site. (R. 16.) Further, Plaintiff can perform simple tasks for two-hour blocks of time over the course of a normal work schedule and can adapt to simple changes in the work routine, but he cannot tolerate work with the public. (*Id*.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including representative occupations of assembler small productions, final assembler, and inspector/hand packager. (R. 24.) The ALJ determined, therefore, that Plaintiff was not disabled. (*Id*.)

**STANDARD OF REVIEW**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*,

819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to evaluate properly Plaintiff's migraine headaches and mental impairments.  Plaintiff also argues that because the RFC is unsupported, the ALJ cannot rely on the opinions of the vocational expert.

### A.  Migraine Headaches

Plaintiff testified that he has daily headaches and severe migraines once or twice each week, with associated symptoms of vertigo, light and noise sensitivity, and pain so severe that he is bedridden. (R. 46-47.)  In her decision, the ALJ acknowledged Plaintiff's testimony. (R. 16.)

As part of her RFC assessment, the ALJ wrote that despite Plaintiff's alleged symptoms and limitations,

> the evidence shows he lives on a 130-acre farm with various animals and he helps take care of them and the property.  He testified that he enjoys taking care of the animals and it helps him relax.  Additionally, [Plaintiff] is the father of 12-year-old and 9-month-old children, and his wife is a full-time nursing student who attends class outside of the home, so [Plaintiff] helps take care of his children as well.  He testified that a typical day involves putting his oldest child on the bus, attending to his 9-month-old child, eating

3

>breakfast, and heading to the barn to complete chores. In the afternoon, he picks up his oldest child from the bus stop and he takes care of his youngest child until his wife returns home from class, including changing diapers and feeding her.

(R. 20, referencing 61-62.) Plaintiff argues that the ALJ erred in relying on Plaintiff's activities to discount the alleged frequency and intensity of his migraines, citing the First Circuit's observation that "a claimant may have the capacity to engage in certain daily home activities but still be unable to function in a workplace environment." *Sacilowski v. Saul*, 959 F.3d 431, 440 (1st Cir. 2020) (citations and quotation marks omitted).

The ALJ did not, however, rely entirely on Plaintiff's testimony regarding his activities; she also noted that Plaintiff's "physical impairments have not required advanced treatment, … and medication and Botox injections have been helpful." (*Id.*) The ALJ further observed that although Plaintiff "asserts that he experiences frequent and severe migraines that leave him bedridden, imaging of his head,[2] physical examinations, and his reported activity level are at odds with this level of impairment and treatment appears to be at least somewhat effective." (R. 20-21.)

The ALJ also found persuasive the assessments of state agency medical consultants Edward Ringel, M.D., and James Hall, M.D, who, according to the ALJ, reached their conclusions based on a comprehensive review of the medical record, and included limitations based on the objective medical evidence. (R. 20.) The limitation to modified

---

[2] Defendant acknowledges that imaging alone cannot substantiate the intensity and severity of the migraine headaches. (*See* Opposition at 6 n.2.) The ALJ, however, also cited other objective medical evidence, such as consistent findings that Plaintiff was alert and neurologically intact, and she observed that more severe examination findings appeared to be largely based on Plaintiff's subjective reports. (*See* R. 19-20.) The ALJ's reference to the benign MRI results, therefore, does not determinatively undermine her overall assessment.

light work with environmental limitations, the ALJ explained, "fully accommodates [Plaintiff]'s symptoms related to his [degenerative disc disorder] and migraines." (R. 21.)

Plaintiff argues that the opinions of Drs. Ringel and Hall are not sufficiently supported to constitute substantial evidence.  Plaintiff maintains the record is replete with Plaintiff's reports about the frequency, duration, and severity of Plaintiff's migraines, and that the State agency medical consultants did not express any disagreement with Plaintiff's assertions.

Plaintiff's argument is not persuasive.  Dr. Ringel did comment on the reliability of Plaintiff's subjective statements. Referencing a neuropsychological examination of Plaintiff conducted at the Togus VA Medical Center (Togus) by Joshua E. Caron, Ph.D., on September 19, 2017 (R. 1671-74), Dr. Ringel wrote, Plaintiff's "suboptimal effort on cognitive testing … reduces the weight I can place on findings that have a volitional component or are purely symptom based." (R. 77, citing R. 1673.)   Upon testing, Dr. Caron found:

> [T]he quick processing speed and speech that was observed during the interview seemed to change dramatically to long verbal response latencies … (which [were] too incongruent to be accurate).  His observed performances on the tests were also far below his observed mental status (and even poorer than would be expected for people with severe dementia).  The combination of these observations strongly suggests the performances were not valid.  Furthermore, every performance validity test administered showed very convincing evidence of suboptimal effort, providing objective confirmation that the test results were not credible.

(R. 1672-73.)[3]  Plaintiff's performance on the test, together with his activity level, generate

---

[3] The test results were inconsistent with Plaintiff's presentation to Dr. Caron prior to testing. Dr. Caron observed that Plaintiff's affect was euthymic, he was very pleasant, friendly, affable, jovial, and

5

legitimate questions about the reliability of Plaintiff's subjective complaints. On reconsideration, Dr. Hall agreed with Dr. Ringel's prior administrative findings, including the weight he gave medical findings based purely on Plaintiff's report of his symptoms. (R. 85-86.) Contrary to Plaintiff's argument, therefore, the ALJ supportably relied on the findings of the state agency consultants.

Plaintiff also argues that the ALJ's rejection of the opinion of one of Plaintiff's treating providers is not supported by the evidence. In a letter dated September 25, 2019, James A. Stevenson, M.D., stated that Plaintiff "experiences … migraine headaches with vertiginous features that last all day every day and have been ongoing since 2004." (R. 2097.) Dr. Stevenson further found that none of the treatments for Plaintiff's migraines, including Depakote, had been beneficial, although Plaintiff's Botox therapies reduced the duration of Plaintiff's migraine postdrome from eight hours to two hours. (*Id.*) Dr. Stevenson opined that when Plaintiff is experiencing headaches and postdromes, "he is unable to work effectively," and remains "totally disabled" by his chronic migraines. (*Id.*) The ALJ found Dr. Stevenson's opinion unpersuasive, explaining that Plaintiff's neurological examinations are generally benign and that the record does not support the level of migraine activity opined by Dr. Stevenson. (R. 21-22.) Given the medical records and findings discussed above, the ALJ supportably discounted Dr. Stevenson's opinion.[4]

---

cooperative, he was alert and oriented, and was able to provide his remote and recent history in detail. (*Id.*)

[4] Although Plaintiff appears to suggest that Dr. Stevenson's opinion is entitled to greater weight because he is one of Plaintiff's providers, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R § 416.90c(a). Moreover, while an ALJ must consider the listed factors – supportability, consistency, relationship with the claimant, specialization, and other factors – "as appropriate[,]" *id.*, § 416.920c(a) & (c), he or she need only explain his or her

In sum, while "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain," *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014), the ALJ here relied on more than Plaintiff's reported activities to discount his assertions regarding his level of impairment, including the evidence of Plaintiff augmenting his symptoms during Dr. Caron's examination, the opinions of the state agency consultants, and other medical records that are inconsistent with Plaintiff's claimed symptom severity.

**B. RFC**

The ALJ determined that Plaintiff's PTSD and depression were severe impairments and found that Plaintiff had mild limitations in understanding, remembering or applying information, and moderate limitations in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing himself. (R. 12, 15-16.) In her RFC assessment, the ALJ limited Plaintiff to performing simple tasks for two-hour blocks of time and adapting to simple changes in the work routine, and found that Plaintiff cannot work with the public, but assessed no limitations on work with coworkers and supervisors. (R. 16.)

The ALJ found persuasive the RFC assessments of State agency psychological consultants, Mary Alyce Burkhart, Ph.D., and Robert Maierhofer, Ph.D. (R. 21.) Drs. Burkhart and Maierhofer opined that Plaintiff's PTSD was severe and assessed limitations

---

consideration of the two "most important factors[,]" supportability and consistency, and "may, but [is] not required to, explain how [he or she] considered" the remaining three factors. *Id*., § 416.920c(b)(2); *see also Ryan M. St. P. v. Saul*, No. 2:19-cv-00169-NT, 2020 WL 1672785, *2 (D. Me. April 6, 2020).

7

which the ALJ later incorporated into her RFC determination.

Plaintiff argues that despite having assessed moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticisms from supervisors, neither Dr. Burkhart nor Dr. Maierhofer accounted for the limitations in their respective RFCs, nor, consequently, did the ALJ in determining that Plaintiff is able to work with coworkers and supervisors, but not the public.

Drs. Burkhart and Maierhofer, however, found that Plaintiff could work with coworkers and supervisors. (R. 79, 88.) In addition, Dr. Maierhofer concluded that Plaintiff could "get along with authorities." (R. 88.) The consultants' findings provide sufficient support for and are consistent with the ALJ's RFC and thus this case does not present the issue that prompted the Court to vacate the administrative decision in *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997 (D. Me. Sept. 19, 2016), upon which Plaintiff relies.[5]

## C. Vocational Expert's Testimony

Plaintiff challenges the testimony of the vocational expert. Because Plaintiff's challenge depends on the Court finding that the ALJ's RFC findings are erroneous, given

---

[5] In addition, any error from the ALJ's asserted failure to assess greater social limitations would be harmless because none of the jobs identified by the vocational expert involves significant social interaction with others. The Dictionary of Occupational Titles (DOT) entry for each job—small products assembler, final assembler and inspector/hand packager—provides under the "People" category that "Taking instructions/Helping" is not a significant requirement of any of these positions. *See* DOT #739.687-030 (small products assembler), 1991 WL 680180; DOT #789.687-046 (final assembler), 1991 WL 681261; DOT 559.687-074 (inspector/hand packager), 1991 WL 683797; *see also Shatema B. v. Saul*, No. 1:19-cv-00566-NT, 2020 WL 4383802, at *4 (D. Me. July 31, 2020) (*aff'd*, Aug. 17, 2020) ("This Court has construed that rating as consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors") (citation and internal quotation marks omitted).

the above analysis, Plaintiff's argument must fail.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of November, 2021.